IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CHARLES JACKSON,

    Plaintiff,

v.                                                     CASE NO. 5:13-cv-284-RS-GRJ

DR. DANIEL CHERRY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court upon Defendant's Motion for Summary Judgment. Doc. 22. Despite being provided notice of the pending motion and the consequences of failing to respond to Defendant's motion, Plaintiff has not filed a response and the time for doing so has long since passed. For the reasons discussed below, Defendant's Motion for Summary Judgment is due to be granted.

### I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated suit under 42 U.S.C. § 1983 alleging a claim for deliberate indifference to his serious medical needs by Dr. Daniel Cherry (Defendant).[1] Doc. 5 at 5–6. In his First Amended Complaint, Plaintiff alleges that he sustained an injury to his right hand from a slip and fall on February 6, 2012, while he was incarcerated at Bay Correctional Facility in Panama City, Florida (Bay CF). *Id.* Allegedly, Plaintiff informed

---

[1] Plaintiff initiated this suit and is proceeding *pro se*. As such, this Court holds Plaintiff's filing "to a less stringent standard" than those drafted by attorneys and liberally construes his arguments. *See Badger v. MCG Health, Inc.*, 546 Fed. Appx. 833, 834–35 (11th Cir. 2013).

the prison staff of his injury and sought medical attention. *Id.* at 5. According to Plaintiff, the prison staff gave Plaintiff an ice pack and offered pain medication for his injury, but the prison staff did not otherwise acknowledge his need for medical attention. *Id.* Plaintiff alleges that he kept asking to see a doctor regarding his hand because of the persistent pain, but 18 months passed before a physician performed an x-ray of his hand injury. *Id.*

After that Plaintiff alleges he was moved to the Reception and Medical Center in Lake Butler, Florida (RMC) where an additional x-ray and an MRI were conducted on his injured right hand. *Id.* Allegedly, another 18 months passed before Plaintiff underwent surgery to treat his hand injury. *Id.*

Plaintiff contends that because of the period of delay, his hand "healed wrongly," and surgery could have been avoided if Defendant had referred Plaintiff to medical specialists sooner or otherwise provided Plaintiff with prompt medical attention. *Id.* at 5–6. Plaintiff argues that his hand injury was an obvious medical need and Defendant willfully disregarded the need by not providing care when the injury first occurred. *Id.* at 5. Plaintiff further alleges that Defendant's indifference caused Plaintiff to experience pain and suffering "for 18 months without proper medical attention." *Id.* at 7.

On June 24, 2014, Defendant moved for summary judgment contending that Plaintiff failed to exhaust his administrative remedies prior to filing suit pursuant to 42 U.S.C. § 1997e and that Plaintiff failed to provide evidence sufficient to show several essential elements of the claim for deliberate indifference to a serious medical need under § 1983. Doc. 22. Defendant argues that the record does not disclose a genuine issue as to any material fact and, as such, Defendant is entitled to summary judgment.

*Id.* The Court issued a notice to Plaintiff regarding the pending Motion for Summary Judgment. Doc. 23. The Summary Judgment Notice informed Plaintiff of his duty to file a response to the Motion for Summary Judgment within 30 days (*i.e.*, on or before July 24, 2014) and of the consequences for failing to do so. *Id.* Plaintiff did not respond to Defendant's Motion for Summary Judgment.

## II.  SUMMARY JUDGMENT STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record" in the light most favorable to the non-moving party." *Samples on Behalf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). "In determining whether summary judgment is appropriate, [the Court is] required to draw all reasonable inferences in favor of the non-moving party, not all *possible* inferences." *Horn v. United Parcel Services, Inc*. 433 F. App'x 788, 796 (11th Cir. 2011) (emphasis added).[2]

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every

---

[2] Although unpublished opinions are not binding on this Court, they are persuasive authority.  11th Cir. R. 36-2.

element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

> The Eleventh Circuit has noted that
>
> [i]t is well settled that "after adequate time for discovery and upon motion, [summary judgment is appropriate] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, in response to a motion for summary judgment, a nonmoving-plaintiff must present evidence in support of his allegations sufficient to raise a genuine issue of material fact regarding each element of his claim. As established in *Celotex,* it is not necessary for the party moving for summary judgment to introduce any evidence at all in order to prevail on his motion. Rather, in cases in which the nonmoving party will bear the burden of proof at trial, the movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him. *Id.* Where the nonmoving party fails to present such evidence, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

*Maxi-Taxi Of Fla., Inc. v. Lee County Port Auth., 3*01 F. App'x 881, 885 (11th Cir. 2008). Where the nonmoving party bears the burden of proof, he must offer more than a mere "scintilla of evidence" in support of his position. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). In addition, if a party fails to properly support an asserted fact or fails to properly address the opposing party's asserted fact as required by Rule 56(c), the court may, *inter alia*, consider the fact undisputed for purposes of the motion and grant summary judgment if the

movant is entitled to it. Fed. R. Civ. P. 56(e).

## III. DISCUSSION

### A. Plaintiff failed to exhaust his administrative remedies prior to initiating suit.

Defendant argues that Plaintiff failed to exhaust administrative remedies available to him as a prisoner prior to initiating this suit and consequently, 42 U.S.C. § 1997e bars this action. Plaintiff does not address this issue in his filings. After a careful review of the record, the undersigned agrees with Defendant.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2012). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2002). Further, the PLRA's exhaustion requirement contains a procedural default component: Prisoners must comply with the applicable deadlines, or good-cause standards for failure to comply, contained in the administrative grievance procedures. *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005). "'[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is

foreclosed by § 1997e(a) from litigating. . . . [T]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024–25 (7th Cir. 2002)).

The Florida Administrative Code requires inmates to voice their grievances through a particular channel. *See* Fla. Admin. Code. rr. 33-103.001–103.007 (2014). In particular, an inmate must commence the grievance process through the use of an informal grievance under Rule 33-103.005 of the Florida Administrative Code. *Id.* at 33-103.005(1) ("Inmates shall utilize the informal grievance process prior to initiating a formal grievance."). However, if the grievance is regarding a medical matter, an inmate may skip the informal grievance step and "initiate the process at the formal institutional level." *Id.* An inmate files a formal grievance by completing Form DC1-303, Request for Administrative Remedy or Appeal, and submitting the form in a grievance box or by sending the form in a sealed envelope through routine institutional mail channels to the reviewing authority. *Id.* at 33-103.006(1)–(3). In the event an inmate's grievance has not been addressed satisfactorily, the inmate may file an appeal directly to the Office of the Secretary of the Department of Corrections. *Id.* at 33-103.007(1). This three-step process constitutes the administrative remedy available to inmates in Florida's Department of Corrections. *Jackson v. Crews*, No. 3:13-cv-174, 2014 WL 4996207, at *4 (N.D. Fla. Oct. 7, 2014).

There is no evidence in the record demonstrating that Plaintiff filed a

grievance of any sort regarding the adequacy of the medical attention for his injured hand. While Plaintiff did file *inmate requests* relating to his medical treatment, these were limited to (1) seeking a refund for medical services not provided to him, (2) rescheduling a missed medical appointment, and (3) requesting the results and records relating to his hand injury. Doc. 22, Appx. A at 67–71. All of these requests were fulfilled. *Id.* Moreover, these inmate requests do not constitute grievances and do not allege indifference to Plaintiff's medical needs. The record is devoid of evidence that Plaintiff ever filed a grievance regarding Defendant's performance or timeliness in treating Plaintiff's injury. Consequently, the Court concludes that Plaintiff did not exhaust the administrative remedies available to him prior to commencing this suit. Therefore, this action must be dismissed pursuant to 42 U.S.C. § 1997e.

### B. Plaintiff fails to establish a claim of deliberate medical indifference to a serious medical need.

In his First Amended Complaint, Plaintiff alleges that despite his constant pleas for medical attention relating to his injured hand Defendant ignored his needs and caused Plaintiff an 18-month delay before being properly evaluated and another 18-month delay before undergoing corrective surgery. Doc. 5. In support of these allegations, Plaintiff filed the medical records relating to the treatment of his hand. Doc. 4. These medical records do not support Plaintiff's allegations relating to undue delays in evaluation and treatment.

In his Motion for Summary Judgment, Defendant argues, with adequate evidentiary support, that Plaintiff's allegations are factually inaccurate and

unsupported by the evidence. Doc. 22.  After a careful review of the record, the Court finds that Plaintiff's allegations do not have any evidentiary support and should not be considered factual assertions for purposes of the summary judgment motion. The remaining question is whether the facts before the Court on Defendant's Motion for Summary Judgment support Plaintiff's claim of deliberate indifference to his serious medical need. They do not.

The Eighth Amendment of the United States Constitution ensures that prisoners not be subjected to "cruel and unusual punishments." U.S. Const. amend. VIII. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment is made applicable to the States through the Fourteenth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 344–45 (1981).

To prevail on a claim of deliberate indifference to a serious medical need, a prisoner must show "an objectively serious medical need . . . that, if left unattended, poses a substantial risk of serious harm . . . [and] a prison official's subjective intent to punish by demonstrating that the official acted with deliberate indifference." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011). Additionally, "[e]vidence of recent traumatic injury . . . has

generally been sufficient to demonstrate a serious medical need." *Brown v. Hughes*, 894 F.2d 1533, 1538 n.4 (11th Cir. 1990) (collecting cases).

To show a prison official's subjective deliberate indifference, a plaintiff must demonstrate "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). Conduct that is more severe than mere negligence includes grossly inadequate care, decisions to take an easier but less effective course of treatment, and care that is so cursory so as to amount to no treatment at all. *Bingham*, 654 F.3d at 1176. Furthermore, a "complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference" and delaying treatment for non-medical reasons may constitute deliberate indifference depending on the circumstances. *Id.* However, a plaintiff who solely alleges that a physician was negligent in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment. *Id.*

In the present case, Plaintiff's right thumb suffered a "mild subluxation/partial dislocation at the first metacarpophalangeal joint," with no identifiable fracture. Doc. 4 at 2, 8. When first reported, Plaintiff described the pain level as a 7 out of 10 on a pain scale. Doc. 22, Appx. A at 122. The medical report states that the injury was a "sports injury," caused when Plaintiff's right hand slipped off of a push-up bar in the weight room. *Id.* Defendant takes issue with whether this condition equates to an objectively serious medical need. Doc.

22. While an injury caused by a recent traumatic event generally constitutes a serious medical need, *Hughes*, 894 F.2d at 1538 n.4, and the nature of Plaintiff's injury was such that a layperson "would easily recognize the necessity for a doctor's attention," *Bingham*, 654 F.3d at 1176, the Court need not make a determination regarding whether Plaintiff's injury constitutes a serious medical need, because, as discussed below, Plaintiff fails to show deliberate indifference on behalf of Defendant.

Plaintiff alleges that he was first injured on February 6, 2012 when he slipped and fell in the bathroom at Bay CI. Doc. 5 at 5. Plaintiff alleges that he was injured and requested medical attention for 18 months before the medical staff ordered an x-ray for his hand. *Id.* Plaintiff further alleges that it took another 18 months before adequate action was taken (*i.e.*, corrective surgery). *Id.* The record, however, is devoid of any evidence supporting the veracity of these claims.

As evidenced by the records before the Court, the first reported injury to Plaintiff's hand occurred on January 14, 2013. Doc. 22, Appx. A at 122. There is no evidence in the record to suggest that Plaintiff suffered an injury in February of 2012 and was ignored by the prison officials. On the contrary, the record shows that once Plaintiff voiced his concerns regarding his hand injury on January 14, 2013, the medical staff at Bay CI responded appropriately by providing Plaintiff with ice, ace wrap, ibuprofen, and analgesic balm. *Id.* The medical staff also directed Plaintiff to use those items and keep his hand elevated as much as

possible. *Id.* Two days later, Plaintiff complained of pain in his hand again and was directed to ice the affected area and take ibuprofen. *Id.* at 123. On February 6, 2013, Plaintiff complained that the pain in his hand was getting worse. *Id.* at 125. Consequently, the medical staff referred Plaintiff to the Defendant, the Chief Health Officer. *Id.*

Notably, the first time the Defendant met with Plaintiff was on February 12, 2013, when Defendant diagnosed Plaintiff's condition as a sprain or potential fracture, and ordered an x-ray to be taken of Plaintiff's thumb. *Id.* at 93. On February 14, 2013, the medical staff at Bay CF conducted an x-ray of Plaintiff's hand, which showed an "[a]pparent mild subluxation/partial dislocation at the first metacarpophalangeal joint. . .[and] [n]o distinct fracture identified." *Id.* at 141. On February 21, 2013, Defendant reviewed the x-ray's results and issued a call-out to offer Plaintiff a consult with an orthopedic specialist. *Id.* at 94. On March 6, 2013, Plaintiff agreed to a consult with an orthopedic specialist and Defendant placed a request for the orthopedic specialist consultation. *Id.* at 95. On that same day, the medical staff at Bay CF placed the orthopedic specialist request in the Offender Management System to allow Plaintiff to be transferred to RMC for specialist care. *Id.*

On April, 10, 2013, Plaintiff was transferred to RMC for orthopedic treatment. *Id.* at 78. At RMC, Plaintiff was seen by a plastic surgeon, Dr. Ong, and underwent another x-ray and an MRI. *Id.* at 127–30. The findings at RMC were similar to those by Defendant—subluxation at the first metacarpophalangeal

joint but no fracture. *Id.* at 145–46. On June 5, 2013, Plaintiff was seen again by Dr. Ong, who recommended surgery. *Id.* at 100. On June 24, 2013, Plaintiff was transferred back to Bay CI from RMC. *Id.* at. 101. On July 8, 2013, Defendant reviewed Plaintiff's records and Dr. Ong's recommendation and discussed these with Plaintiff. *Id.* at 102. On that same day, Plaintiff agreed to the surgery, and his surgery was scheduled for August 1, 2013 at RMC. *Id.* at 102, 131. On August 1, 2013, Dr. Ong performed surgery on Plaintiff's right thumb at RMC. *Id.* at 103. Plaintiff remained at RMC for post-operative care until September 5, 2013, when he was transferred back to Bay CF. *Id.* at 84–85.

On September 11, 2013, Plaintiff was transferred back to RMC after Defendant suspected an infection in Plaintiff's right hand resulting from the surgery. *Id.* at 86–87, 108. Plaintiff remained at RMC until March 10, 2014. Doc. 22, Ex. C, l. 43. At RMC, Plaintiff underwent further evaluation, and his hand was determined to be in good condition.  Doc. 22, Appx. A at 134. Further, the staff at RMC removed the surgical pin from Plaintiff's right hand and conducted physical therapy for Plaintiff's thumb. *Id.* at 112–19, 134. Upon Plaintiff's return to Bay CF in March 2014, Defendant met with Plaintiff for a follow-up visit. Doc. 22, Ex. C, l. 45.

Although the process of seeing a physician, being diagnosed and referred, and then undergoing treatment in the form of surgery may not have been as expeditious as Plaintiff would have liked, the chronology of events do not demonstrate that Defendant was deliberately indifferent to Plaintiff's medical

needs, as required to sustain a constitutional claim against Defendant.

Instead of showing deliberate indifference the undisputed facts show a continuity in Plaintiff's treatment. It was more than reasonable for the prison medical staff not to have ordered an x-ray or involved a medical doctor immediately after the Plaintiff complained of his injury and instead to have ordered anti-inflammatory medicine, ice, and other simple care—which was provided to Plaintiff pursuant to his first complaint regarding his hand injury. Only after Plaintiff's injury did not resolve did the medical staff refer the issue to Defendant, who in turn ordered an x-ray and then a referral to a specialist. Once Plaintiff was transferred to RMC, the orthopedic specialist and staff took the necessary steps to treat Plaintiff's thumb.

The chronology of events demonstrate that Defendant's involvement in Plaintiff's treatment was minimal. Defendant first began treatment of Plaintiff when the Bay CF medical staff referred Plaintiff to Defendant because Plaintiff's hand injury was not improving through treatment for minor sprains. After the initial evaluation Defendant promptly met with Plaintiff and took the necessary steps to diagnose Plaintiff's condition, which included referring Plaintiff to a specialist. Plaintiff was then transferred to RMC, where he received specialized treatment. During this period of time Plaintiff was not under the care or treatment of Defendant because he was located in RMC, a facility where Defendant was not located.

Moreover, Defendant only interacted with Plaintiff two additional times after

this: (1) when Plaintiff returned to Bay CF from RMC and it was suspected that Plaintiff's hand was infected because of the surgery, and (2) when Plaintiff ultimately returned to Bay CF from RMC upon completion of Plaintiff's physical therapy. In all of these instances, there is no evidence in the record that Defendant disregarded his duties to Plaintiff.

Simply put, Plaintiff's deliberate indifference claim must fail because there is no evidence in the record demonstrating or even remotely suggesting that Defendant ignored Plaintiff's injury or that Defendant was deliberatively indifferent to the medical care and treatment of Plaintiff's injury to his hand *See Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011).  Indeed, the evidence of record conclusively demonstrates that Plaintiff's chronology of events recounted in his First Amended Complaint are not accurate and correct.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion for Summary Judgment, Doc. 22, should be **GRANTED**, and that judgment should be entered in Defendant's favor.

**IN CHAMBERS**  this 7th  day of November 2014.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings**

*Case No: 5:13-cv-284-RS-GRJ*

**and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**